**Mark D. LARSON, M.D., P.A. and
Mark D. Larson, M.D.,
Petitioners,**

v.

**Mary Martha DOWNING, Respondent.**

**No. 05–0155.**

Supreme Court of Texas.

June 9, 2006.

Rehearing Denied Aug. 25, 2006.

J.B. Whittenburg, Gilbert I. "Buddy" Low and Micheal Lane Painter, Orgain Bell & Tucker, L.L.P., Beaumont, for Petitioner.

Toby C. Easley and Jeffrey Robert Matthews, Matthews & Easley, P.C., Houston, for Respondent.

PER CURIAM.

In determining whether a person is qualified by training and experience to testify as an expert in a case involving a health care liability claim, the court is required by statute to consider, among other things, "whether, at the time the claim arose or at the time the testimony is given, the witness . . . is actively practicing medicine in rendering medical care services relevant to the claim."[1] The trial court in this medical malpractice case excluded the plaintiff's expert because it had been fifteen years since he had performed surgery like that performed by the defendant. A divided court of appeals reversed. 153 S.W.3d 248 (Tex.App.—Beaumont 2004). We conclude that the trial court did not abuse its discretion. Petitioner, Dr. Mark Larson, operated on respondent, Mary

---

1. Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 2, 1995 Tex. Gen. Laws 985, 988 (TEX. REV.CIV.STAT.ANN. art. 4590i, § 14.01(c)(2)), *repealed and recodified by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 878, 884 (current version at TEX. CIV. PRAC. & REM. CODE § 74.401(c)(2)).

Martha Downing, on July 14 and August 6, 1998, to repair a left orbital blow-out fracture which had entrapped a muscle in her left eye. She sued Larson, alleging that because of his negligence she required a third surgery to release the entrapped muscle. She filed an expert report by Dr. Martin L. Bell (who is also a lawyer), her only expert, who was deposed in March 2002. Larson then moved for summary judgment, asserting that Bell's testimony should be excluded because he was not qualified as an expert, and that without his testimony Downing had no evidence to support her claims. Specifically, Larson argued that Bell was not qualified because he had admitted that at the time of his deposition it had been fifteen years since he had treated an orbital blow-out fracture, and that while he had used silicone implants with a dacron mesh manufactured by Dow Corning, he had never used a titanium mesh implant manufactured by Synthes as Larson had done. Downing responded that Bell had been a practicing physician since 1975, that he was licensed in four states (Louisiana, Massachusetts, California, and Arizona) and one foreign country (the Netherlands), that he was board certified in surgery, plastic and reconstructive surgery, and cosmetic surgery, that he had been chief of plastic surgery at two medical centers, that he had been an assistant clinical professor in plastic surgery at Tulane University and had taught there until about a year before Downing's surgery, and that he continued to practice in Arizona. Bell explained why he had not repaired an orbital blow-out fracture in fifteen years:

Like many plastic surgeons, as you progress in practice, you tend to go from reconstructive surgery into cosmetic surgery. And since facial fractures tend to be emergency cases at all hours of the day and night, you get younger associates who come in with you and they do it and that's basically the progression of my practice.

Downing did not offer evidence that Bell had ever taught the surgical procedure.

The trial court granted Larson's motion, and Downing appealed. A divided court of appeals reversed and remanded, applying the statutory requirements for expert testimony in medical malpractice cases then in effect. The court reasoned that a qualified expert witness was not required to have performed the same surgery as the defendant, and that "training residents or students at an accredited school of medicine",[2] as Bell had done for years, was specifically included in the statutory definition of "practicing medicine". 153 S.W.3d at 253. The court also observed that there was no evidence that any differences in the two types of implants mattered. *Id.* The court noted that Bell had not performed the surgery Larson had in more than fifteen years and recited Bell's explanation but did not specifically address what weight the trial court should have given it. *Id.* The dissent would have held that the trial court did not abuse its discretion. *Id.* at 254.

Whether to exclude Bell's testimony is a close call on this record. Close calls must go to the trial court. As we said in *Broders v. Heise:*

The qualification of a witness as an expert is within the trial court's discretion. We do not disturb the trial court's discretion absent clear abuse. "The test for abuse of discretion is whether the

2. Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 2, 1995 Tex. Gen. Laws 985, 988 (TEX. REV.CIV.STAT.ANN. art. 4590i, § 14.01(b)), *repealed and recodified by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 878, 884 (current version at TEX. CIV. PRAC. & REM. CODE § 74.401(b)).

trial court acted without reference to any guiding rules or principles."

924 S.W.2d 148, 151 (Tex.1996) (citations omitted) (quoting *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex.1995)). There, we held that the trial court did not abuse its discretion in excluding the expert testimony of a physician not shown to be qualified to treat a head injury like the one the plaintiffs' daughter had suffered. 924 S.W.2d at 154.

The trial court in this case did not act without reference to guiding rules. It was required by statute to consider whether Bell was "actively practicing medicine in rendering medical care services relevant to the claim." [3] At the time the claim arose, it had been at least eleven years since Bell had performed the surgery at issue, and there was no evidence that Bell had ever taught the procedure. The trial court was well within its discretion in determining that Bell was too far removed from surgical practice and even from teaching. We said in *Broders* that expert qualifications should not be too narrowly drawn, but we also said that

> given the increasingly specialized and technical nature of medicine, there is no validity, if there ever was, to the notion that every licensed medical doctor should be automatically qualified to testify as an expert on every medical question. Such a rule would ignore the modern realities of medical specialization.

924 S.W.2d at 152.

Accordingly, we grant Larson's petition for review and, without hearing oral argument, reverse the judgment of the court of appeals and affirm the judgment of the trial court. TEX. R. APP. P. 59.1.

---

**3.** Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 2, 1995 Tex. Gen. Laws 985, 988 (TEX. REV.CIV.STAT.ANN. art. 4590i, § 14.01(c)(2)), *repealed and recodified by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 878, 884 (current version at TEX. CIV. PRAC. & REM. CODE § 74.401(c)(2)).